Good morning, Your Honors. Alisa Solano-Peterson for Appellant Michael Lewis. Your Honors, to establish a claim of ineffective assistance of counsel, there must be a showing that the attorney's performance was deficient and also that defendant was prejudiced as a result thereof. And both of these requirements are established in this case. Firstly, irregardless of whether there had been prosecutorial misconduct, the record shows that defendant was faced with a situation where his counsel had referred an opening statement that there was going to be a defense expert and the defense expert never materialized. And also, defendant, after trial started, was faced with a situation where there was no defense expert. So there was not going to be anything to rebut the opinion of the government's expert. And under such circumstances, it was incumbent on defense counsel to either request a mistrial or certainly, after the trial was finished, to request a new trial. And especially in regards to the new trial issue, at that point, counsel knew what had happened in the trial and that the jury had been confused and misled because there had been jury ‑‑ there were jury notes showing that the jury was concerned that the defense expert wasn't there, wondered why he wasn't subpoenaed, why there was no subpoena to bring him in. They were quite interested in the fingerprint evidence, wanted to see it again. They even claimed they were deadlocked. And although it was a very simple case, they took a long time to deliberate. Deliberate.   Thank you. All right. Have you discovered any expert who's just ‑‑ or does the record show that you've discovered any expert who would indeed say that these prints were not matched, a match? Well, I don't think that, you know, that needs to be established. Would you answer my question? Whether it's a stupid question or not, I'd like an answer. Whether there would be somebody who said that it was. Have you, the defense, discovered any expert who would testify that it's a match, as far as this record shows? Well, I think what the record shows, not that they had another expert in the wings to testify, but defense counsel said he wasn't sure whether he could find one or not. Obviously, he was sandbagged right in the beginning of trial, and he hadn't had a chance to look for another expert. Does the record show that since he made what you consider this egregious error, does the record show that, indeed, such an expert has been found? No, the record does not show that an expert has been found, but I think the record does show that defendant was deprived of a fair trial, because just the fact that there was a reference to a defense expert so that the jury knew about a defense expert and that none materialized, I think, was very confusing to the jury. And it was deficient performance on the part of counsel, because, as I said, especially after the trial, it was obvious what had happened, and after the ineffective cross-examination of the government's expert, there was absolutely no reason and no strategic reason not to request a new trial, and yet that was not done. But wasn't there a consultation with another attorney in the office as well as the client before the defense counsel made the decision not to request a mistrial? Well, that's true. He did say that he spoke to his supervisor. And to his client. Yes. In regards to the mistrial, I think the record is certainly not as clear in regards to a new trial, you know, why there was no new trial requested, because actually defense counsel was on vacation, somebody else stood in for him and requested a continuance for a new trial motion, and yet there was none brought. Well, how successful, I mean, would it have been to request a new trial once the court had already acquiesced to the defense counsel's method of counteracting the lack of a fingerprint expert? Well, I think when you look at the record, the court was very reluctant about going through with the trial. It was the court's idea as to the possibilities of a mistrial, because the court believed that nothing else, it's possible that nothing else would cure the problem of the jury being told that there was going to be a defense expert. So I believe that if asked, the court would have granted, there was a substantial likelihood that the court would have granted a new trial, especially in consideration of, you know, everything that did happen at trial. And defendant was definitely prejudiced because he was deprived of a fair trial. There was this reference to a defense expert. At what point do you think the trial court would have granted a new trial? After the conviction you're saying, do you think the court would have granted a new trial at that point or before the trial? Well, the court was certainly, appeared willing to grant a mistrial. And I think the court was also, the record shows that the court could very well, you know, substantially likely that the court would have granted a new trial after trial. After the conviction? Yes. And the prejudice comes, like I said, by the fact that the defendant was deprived of a fair trial. I have nothing, nothing further I'd like to reserve the rest of my time. Thank you. Your Honor. Good morning. Andrew Brown for the Government Appealee. May it please the Court. The record in this case shows that trial counsel, far from being ineffective, was in fact extraordinarily diligent and carefully weighed options in order to determine the optimal strategy for his client under the circumstances. Let's look at what the trial counsel in fact did. First, he arranged to limit the government to calling a single fingerprint expert, even though at the time of trial there had been six fingerprint experts who had examined the fingerprints and all had ultimately concluded that the prints matched with 100 percent certainty. Second, trial counsel moved to dismiss the indictment for government misconduct and preserve that issue for appeal. Third, trial counsel moved to preclude the government from calling even its one agreed-upon expert and preserve that issue for appeal. Fourth, trial counsel arranged to impeach the government's sole fingerprint expert with evidence of his alleged bias and intimidation of Howard Sanchuk, the defense expert. Fifth, trial counsel arranged to introduce into evidence Howard Sanchuk's initial opinion that the fingerprints did not match without ever introducing into evidence the true ultimate conclusion of Howard Sanchuk that the prints did match. Sixth, he arranged to keep a jury that he believed was favorable to the defense and preserve, seventh, the effective cross-examination he performed of the government's main eyewitness. Defense counsel did all these things in consultation both with his supervisor and with defendant himself. And, in fact, his efforts nearly succeeded in hanging the case before the trial jury. Even after trial, trial counsel appealed the denial of the motion to dismiss as well as the motion to exclude the government's witness and even sought certiorari before the Supreme Court. Kennedy. Even to say he even appealed or he appealed as if that's some remarkable decision to make. The question is, why didn't he file a motion for a new trial? What possible reason would there be not to file a motion for a new trial? Your Honor, I think there were two primary reasons. It's clear from the record that defense counsel had in mind, even at trial, his appellate options. There are several places in the record where he indicates that he wants to reserve his motion to dismiss for outrageous government conduct for appeal. And I believe that his appellate options would have been greatly diminished had he moved for and obtained a new trial. As the record went up the first time, he was able to say, I reasonably thought that my defense expert was going to be available. He wasn't available through the government's misconduct. It's outrageous. You should dismiss. Had he won a new trial motion, the evidence against his client at a subsequent trial would have been much stronger, and then his appellate options would have been much more limited because the government could have effectively responded, yes, but you got a new trial, nothing wrong happened in the new trial, no harm, no foul. So I think the number one factor was that he had a much greater likelihood of success on appeal without filing a new trial. And he could get the indictment dismissed with prejudice? Yes, Your Honor. I believe that was the primary goal. The other reason it was reasonable for him not to move for a new trial is there's no chance that it would have been granted. If you'll recall, Judge King indicated initially that he wanted to grant a mistrial. Defense counsel specifically asked that he not do that and instead craft a cure. And the cure defense counsel himself requested was the ability to cross-examination of William Leo as to his alleged bias and intimidation. Now, he also, after getting Judge King to agree to that, said that he wanted to be able to elicit Howard Sandsuk's initial opinion that the fingerprints did match. And the judge agreed to that. There were at least a full day's hearings on what could be done to cure this and what the defense asked for the defense got. But what actually happened at trial was even more favorable to the defense than what the defendant himself, through his counsel, had negotiated. First, there was supposed to be a limiting instruction on Howard Sandsuk's initial statement that he thought the fingerprints were going to match. It was supposed to be limited solely to William Leo's state of mind in going and confronting him about this. But that instruction was never given. So the jury had the erroneous impression that there was a fingerprint examiner who had found that the prints don't match. And that is where defense counsel is now saying the confusion came in. Yes, there was confusion, but it was confusion that was favorable to the defense. The second way in which the trial actually went better for the defense than the defense had bargained for was Judge King had ordered defense counsel not to argue that Howard Sandsuk had been intimidated off the stand. And the reason for that was Judge King found, after conducting an evidentiary hearing, that he hadn't been intimidated off the stand. And yet, that is exactly what defense counsel argued. And in fact, at page 293 of the government's excerpts of record, Judge King says, And this is from a response to the government's request that the government be allowed to argue what, in fact, happened.  So again, the evidence that the jury heard and the argument that the jury heard was more favorable to the defense than what the defense had requested and what Judge King had ordered would be permitted. So in order to win a new trial motion, the defense would have to say, well, yes, Judge King, you did give me everything I wanted. And yes, I did, in fact, get even more than I was entitled to. But now that I realize my client's been convicted, I wish I hadn't done this, and I'd like to go back and do the whole trial over again. And there is no chance that Judge King would have done that after spending a full day with defense counsel, negotiating this, and defense counsel getting more than he was entitled to. Counsel, would your same rationale apply to the defense counsel's decision not to accept the Court's offer of a continuance? Yes, Your Honor. I think that that was a very reasonable strategic decision, because at that point, it was clear, as defense counsel well knew, that there was no way that he was ever going to find a fingerprint expert to testify. Did he say that? Well, yes, Your Honor. Was it clear? First, in his declaration in support of the government's opposition to the 2255, he states that he did not believe that the defense would be able to find a fingerprint expert to testify that they did not match. That's different than saying it's clear that he couldn't find an expert. Yes, Your Honor. And then I'd like to read one snippet. This is from appellant's excerpts of record at page 164, when Judge King is actually addressing the possibility of a continuance. He says to Ron Kaye, Now, of course, it's not in the record, but Judge King fortunately does say it. Ron Kaye burst into laughter when Judge King said, I'll give you an opportunity to find another defense expert. And it was quite irritating to Judge King, as I think that quote makes quite clear. So in conjunction with his declaration and the appellant's excerpts of record, I believe that it is clear that Ron Kaye knew there was no way that he was going to find a fingerprint expert who was going to testify that the fingerprints didn't match after six experts, including two retained by the defense, found that they did match with 100 percent certainty. I'd also like to. Counsel, what was defense counsel's response to the Court's statement? He said, quote, I have no idea. And that's the preceding sentences. Maybe that's suggesting to me that you really think that the opinion is more closer to fact than opinion, as you were suggesting. Mr. Kaye, I have no idea. Exactly. So he didn't really ratify the Court's assumption in that regard. Your Honor, in this context, I think laughter speaks louder than words. But certainly in terms of his words, you can't say that he did. I also want to address briefly the issue of whether there should have been an evidentiary hearing. In defendant's reply brief. Kennedy, if you could do it in about a minute, your time's up. In defendant's reply brief to the 2255, he begins by stating that most of the government's points in opposition have been, quote, fully addressed, and the defendant will, quote, only address other issues upon request of the Court. And then he asks for a, quote, evidentiary hearing so that I can further address my issues better. There's nothing that suggests any disputed issue of fact. There's nothing suggests anything that he wants to get out of that hearing. In fact, in context, it makes it appear that the defendant simply didn't understand the difference between a hearing where he would be able to argue and an evidentiary hearing where he'd be able to bring out new facts. And even now with current defense counsel, current defense counsel does not identify a single disputed fact, and therefore, Your Honors, need not remand for a new evidentiary hearing. Thank you. Ginsburg. Your Honors, first to address the issue of evidentiary hearing, a lot of what the government's attorney was saying is his argument as to what the state of mind was, what defense counsel's state of mind was in regards to not requesting a new trial, and yet there's no mention of that because, in fact, there was a declaration submitted by defense counsel in connection with the 2255 proceedings, but it only addressed the issue of a mistrial. There's absolutely no mention about defense counsel's opinions about requesting a new trial. So that makes it clear that if the Court believes there's not enough on the record as it is now to show there had been ineffective assistance, then at a minimum, there should be an evidentiary hearing, because there should be an evidentiary hearing on a 2255 motion unless it's very clear from the whole record that the claim is frivolous and there's absolutely no possibility that a defendant would have such an issue. And here ---- Well, what counsel argues is there's really no prejudice anyway, because it's perfectly obvious, A, the Court wouldn't have granted one, and, B, you couldn't have done any better on a new trial than you did on the first one. And, indeed, you'd be worse off because you couldn't appeal and maybe convince us, because we do all kinds of strange things, convince us to overturn the district  It wouldn't be in that position. Well, first of all, if we're not talking about defense counsel's mental processes, but we're saying that there's no prejudice because he would have done better by appealing, I think that that is not true, because he would do a lot better by requesting a new trial. But you don't need an evidentiary hearing on that question, do you? That's all I'm asking. No, you don't, Your Honor. But obviously if he had requested a new trial, it's much more likely he would have been granted a new trial than to go up and appeal on a prosecutorial misconduct issue in hopes of getting a new trial. And as far as confusion to the jury, the prosecutor said that there was any confusion was in the defendant's favor, and I don't think there's anything in the record that shows that the prosecutor concedes that the jury was confused, and therefore the defendant was denied a fair trial. What evidence would have been presented at a hearing that was not available to the court already? I think the mental processes of defense counsel as to why he did not request a new trial. He was out of town, there was a continuance granted for a new trial, and yet there's nothing on the record as to why he didn't request it. And I think that's the clearest thing, that there's absolutely no reason not to request a new trial. Thank you, Your Honor. Thank you, counsel. Case disargued will be submitted.
judges: Reinhardt, Fernandez, Rawlinson